Case 17-3521 USA ex rel J Lynn Roycroft v. Geo Group Inc. et al. Oral argument, 15 minutes per side. Mr. Connors for the appellant. Good morning. I'm Tom Connors. I represent Lynn Roycroft, who is a relator and is bringing her claim on behalf of the United States. I would like to reserve five minutes for rebuttal. This appeal is mainly about whether the relator has sufficiently pled the existence of false statements in her FCA claims. In her complaint, she identifies two types of false statements in her representative claims. First, at paragraph 70, she alleges that there was a misrepresentation regarding the amount of services in the representative claims. In paragraph 71, she alleges that the description of the services and the provider status that were put on the representative claims were false by reason of failure to disclose that the defendants had not complied with the regulations defining those services and that provider status. Now, the district court. Can I stop you right there for a second? I think you've accurately described paragraph 70 and 71 of the complaint. And then it goes on in paragraph 72 to say these are representative samples of the false claims. And it's A through J. When I look at A through J, I can't tell from any one of A through J whether the alleged falsity came out of paragraph 70 or 71. And even if I could sort of guess at that, then I still don't know what claim says what treatment was provided that wasn't, in fact, provided. Nor can I look at any of these claims and say which treatment code was wrong or what identification number was wrong with respect to any of those claims. Now, that may well be just because I don't understand this, but is there a way for the person you're suing or me to be able to divine that information other than in a very general sense for any of these ten claims? Yes. How? Paragraph 70 and 71 were comprehensive. They apply. How do I know in claim A whether paragraph 70 or 71 applies? The allegation is that both apply. All of the claims are representative of both paragraph 70 and 71. All of the things in 70 and 71 are subsumed within representative sample A? Correct. And how do I know what treatment service was sought for which they didn't provide? They're all about counseling services, group counseling services. In fact, all of the claims were... Why didn't you just say that what was wrong with each one of these claims? I thought I had by simply asserting that these applied to all of the representative claims. It's true, I could have reiterated and said further, but I believed and the relator believed that this was sufficient because you were identifying a deficiency. So you think in claim A, using that as an example, if you had said with respect to claim A that defendant hadn't provided all the treatment services for which they're seeking reimbursement. That's what I'm quoting from 70. If you had said that and related that to A, you think it would be enough? Yes, I do. Even though you don't say what treatment service? Well, I had identified the primary deficiency, which was they had failed to provide closure group services historically throughout the tenure of the relator. Therefore, that applied to all of the claims. You allege that because somebody told your client after the fact that one shift, that they learned from the supervisor of one shift that these services weren't being provided. So you don't know whether claim A came from first shift, second shift, third shift, whether this is happening on all of the shifts. Was it the lunch hour question? Was it they stopped early? We don't know any of that with respect to specific claims, do we? We do know it because the closure group was not performed at all, at all. So all claims during the period in question would have that problem. And that was what was intended. Now, if there is a deficiency, then Newberry says you can't dismiss a 9B claim without leave unless it's clear that that claim can't be saved. So if I have to go back and restate that what I meant was that every claim that is described has the deficiency of no closure group was provided, I can do that. I thought that I had. I'm trying to be efficient in how I'm presenting. Did you ever ask to amend? I wasn't permitted. At the end, I was dismissed without leave. And at that point, the case was closed. You can always file a motion to reconsider. How can that be? How can you be cut off from that right? We could, but under Newberry, that's not required. In Newberry, didn't the plaintiff have some sort of a very detailed affidavit that had much more detail about support the allegations of the complaint? Yes. Something to that effect, and we don't have that here. No, but Newberry's standard is such that we fit within it. It says it's got to be clear that the complaint can't be saved. And it's not clear that this complaint can't be saved. I guess in Newberry, the affidavit helped make it clear that the complaint could be saved, if I'm correct. I don't know what was in the affidavit. I understand what you're saying. Okay. But I'm just saying the standard is broad enough. Okay. Because the standard is framed as it's got to be clear that it can't be saved, and it's not clear in this case. In fact, I would submit we're trying to be efficient in pleading, and I believe, and I still believe, that 70 and 71 were descriptive and comprehensive of every representative claim, and that if you then go back to the details, and you go to the piece of evidence that said the closure group is not being performed, and that's part of the three hours that they're billing. For every one of these representative examples, bill for closure hours? Yes. Okay. That's what we're alleging. Is there a code or any information on these that would tell us that? Yes. The evidence of the claims was attached to the dismissal motion, a reply brief, so I didn't get to argue it in the district court, which contained the codes that were charged, and they are general group counseling services. So there's no question that these claims are group counseling services. So that would be under activity on the exhibit that includes the statement and the numbering? Is that a program, INTP? Is that an activity? What is specified on these billings that would show that they include closure services that were not rendered, and that they used payment codes to specify counseling service, whereby the defendants represented that they had provided specific types of treatment? They use a code number, which is part of a public system that defines the services provided as group counseling services. I'm trying to figure out where to find it on the sheet. I suspect it's under the column billing code. I would suspect that. I didn't have it in front of me. So you're saying if one was to look at H0015HF, you'd find that applies to counseling services? Correct. The group counseling services. So we know what the services were. We know. Now, my client was a clinical supervisor. She quit when she found this out because she is certifying that all of these services are being performed. She's going through this elaborate procedure, which I tried to explain in detail about progress notes and whatnot, that were false. And after she's there maybe eight months, she's struggling to get this done right. And then she's told, why aren't you putting down detail on this? And eventually it came out that we're not doing closure group. She went and verified with others, and she quit. So it wasn't just a minor detail. And do you know the codes that show that certified representatives were providing these services? Are they also on these claim forms? That comes within the context of the provider number. Because, well, no, that's implicit in your provider status and your service code. Because the regulations require that you hold that certification in order to render that service. Right. When you identify the service code, you say, I have performed these with trained personnel. When you identify your provider code, you say, I am a certified facility, and I meet the regulations on that. And when you fail to disclose, according to the Supreme Court, that you don't, then your representation, which is these code numbers, is false by omission. So that's a second claim, and that applies to all ten. A further issue that is being raised is materiality. That relates only to one of the types of false statements here. The express false statement would be when I lie about the amount of services. The implied false certification claim is when I'm using codes that are false because I don't disclose that I violate the regulations. Well, Escobar said materiality is important. In other words, those regulations have to be meaningful. It can't be, I'll use a can opener when I'm opening a can or something that is minor. Escobar was about counseling services. Very similar to this case. And it focused on a number of factors. The main one is that the regulations are central. The centrality of the licensing and supervisory regulations that were violated. So, and that court said a compliance with similar regulations to those that we have in place here, regarding adequate training and professional credentials, are a textbook example of a representation that is material to the payment decision. Materiality is, it's got to be meaningful to the payment decision. If it's a minor flaw, forget it. But if a reasonable person wouldn't pay the bill if they knew the truth, then it's material. So we fit within the Escobar rule. And I guess I'm out of time for now. Okay, you'll have your full five minutes. All right, thank you. Good morning, Your Honors. My name is Peter Ennis. I'm here representing the appellee who are the defendants below. I'm going to spend my time talking about the Benes versus Bristol-Myers-Squibb because, number one, that case was decided after the briefs were submitted in this case. And, number two, because I think both the majority opinion and the dissenting opinion support the district court's judgment in this case. Talking about the majority opinion first. That's basically a presentment claim, right? I'm sorry? That's basically on the presentment issue, right? On all issues, Your Honor, but including the presentment issue, yes. Which was the ultimate resolution. Correct. It's the presentment issue. Right. But you have filed these, and that shows that the claims were actually presented to Medicare, right? That is true, Your Honor. So isn't that issue satisfied here? The presentment issue. So I want to be very clear. What the law requires is presentment of false claims. So it's not just a presentment issue in and of itself. It's the presentment of a false claim. So that's why I go back to Ibenez. Because if you look at pages, I think it's 14 and 15 of Ibenez, one of the examples given of what is a false claim being presented was the prescription being filled by Massachusetts Medicaid for a child before the drug had been authorized for use by a minor. So on the face of that document, there was a false claim. You could tell the time, place, and manner of the false statement from the claim itself. And that's a requirement of blood zone. What Mr. Conner says is that you can tell that from these claims. And that's what Judge Trench and I were looking at when we were looking at these claims. They've got all these different columns, billing codes, activity, status. So do those, I assume, billing codes tell us or tell whoever knows what they're reading that the claims are being submitted for group counseling services? And the answer is no. There's nothing that's in those codes that say what is false. That's the issue in this case. That's not my question. If you look at these codes, do these numbers correspond, for example, to group counseling services? It could, but you can't tell from the code specifically what service is being provided. Because the code is broader. Because the code is broad and there are various things that go into it. So even if group services, counseling services, weren't being provided, assume that for my hypothetical, if you look at these claims, can you tell from the face of the claim whether you were even billing on that particular claim for group counseling services? No, you can't. Well, what can you tell you're billing for? The government allows you to bill for particular services. Your position is that the activity statement does not tell you whether counseling services were rendered and are now being billed for? What you can't tell is, for example, the group counseling session. You can bill for various services, various types of counseling services, and you can't tell from the actual bill what exactly was being billed. Well, you know you're required to render so many hours of service a day. Correct. That's the regulatory provision. And are you telling me that the code that you put in the bill for that doesn't say to the government, here is our satisfaction of those required number of counseling sessions, pay us for them? Not specifically because there are various types of counseling services that can be provided and billed to the government. It's not just a group. It can be individual. It can be group. It's different types. And your bill doesn't tell them whether you are billing for the required number of hours a day of group services? It's not broken down like that, no, Your Honor. It's just a number of the total hours. And as you can see from the statements, some of them were less than three. And I think there was a couple that were two. But you can't tell from the bill exactly what was not being provided. So as an example, in the one of the statements where or the two of the statements where only two hours was being billed, is that the group session that was supposedly not being provided? You can't tell. Although what you can tell is in that bill, what the defendants did was billed less than the three hours. That's all you can tell. And you don't even know if it was for this allegedly illusory group session at the end? You don't. Right. So going back, so in contrast to both Ibenez and Prather, where you can tell on the statement itself. So in Ibenez you have this prescription that on its face you can tell. You don't have to look at another allegation. On its face you can tell that prescription was filled for a child when the drug hadn't been authorized. Well, but you had to know the age of the named child, right? Right. And that's not on a prescription, is it? It was – I don't recall, Your Honor, I shouldn't say that, but I don't recall specifically. I would be fairly certain that they would not be telling the age of anyone for whom a prescription is being made, particularly in light of the fact that at that time you couldn't give it to juveniles. So you had to look to something else to find that information out, and that was another allegation of the complaint. And I agree, Your Honor, but in this case – so a couple things. I want to go back to Prather, and Prather is another example. Well, let's go on with what you were telling me. Yeah, okay. Because it seems to me that the example you've given doesn't really support your argument that you can look at the face of that and know all the information you need to know to determine whether there has been a violation. But I think your example doesn't work for that because you couldn't know the age of the child. Okay, so – Or the facility in which the child was being treated to tell you that it was a psychiatric problem and it was for a juvenile. So – You're not saying you can't look at the allegations in the complaint to form the assertions of what's fraudulent. You're just saying you look at what the complaint says, and then can you tell what problems the complaint spells out are actually present in each individual bill. Isn't that all you're saying? Yes. And so I've been – one of the things that the court said was you have this prescription and you have allegations of the fraudulent scheme, the salespeople promoting off-label use, but you don't have the connection there. That's what is wrong with this complaint as well. You don't have a connection. You have these invoices or claims, and you have some allegation, but the plaintiff and the appellant want you to infer that those are connected. There's no specific allegations on that. Well, let's look at – let's think of the Sanderson test. Don't these allegations provide these, the bills themselves, provide the who, what, and when? They're dated, service renderers' names are provided, and programming codes and activities are provided. So you know who, what, and when, right? Yes. All right. Then the allegations of the complaint immediately preceding this list of bills in 67, 68 through 71 provide you the where and how. And what your opposing counsel says is it's all of them. These bills represent failure to be certified when you render services, failure to render the full amount of services when you're billing for them. Why isn't that enough? We're not at the merits, and I know you make some pretty good merits arguments in your brief, but we're not there. I understand. So two things. First of all, who, what, but not the manner. There's nothing about the manner of the false statement in those statements. Well, the five Sanderson provisions are who, what, when, where, and how. That is correct. And what is the, where do you think they fail? So I'm going, in terms of looking at the actual statement, Bledsoe 2 says you have to also look at the, that the statement is the time, place, and manner that you look at the statement. And what I'm saying is you can't tell from, number one, you can't tell the manner, and number two, that statement is not tied to any specific allegation. You have to infer that you go back to those previous paragraphs. And, Your Honor. I understand that. They allege, I know the people were not trained as they are required to be trained in order to render this service. So that's the allegation. Now, you look at the bill and you say, was R. Wagners adequately trained? Was R. Aldridge adequately trained in order to bill for counseling services? Their response is none of them were. Their response is you billed and you didn't train, so I have alleged that the manner in which you have rendered counseling services is inadequate because you are rendering them with inadequately certified personnel. If those were the allegations in the complaint, I would agree with you, Your Honor. But that's not the allegations in the complaint. The allegations in the complaint on that particular issue is that, the question is whether someone is certified to provide these services. There is not a single allegation that these people were not certified. The only allegation is. Gosh, I'm looking at paragraph 71. These claims were false and fraudulent because they used payment codes corresponding to specific counseling services whereby defendants represented that they had provided specific types of treatment. The claims also use identification numbers corresponding to a specific residential treatment program. And by conveying this without disclosing the violations of basic treatment services, staff, and licensing requirements for alcohol and drug addiction problems, they are misrepresentations. So that's a broad allegation. If you look at the specific allegations, all you have on certification is two times at the beginning of her employment where she goes and training sessions were not provided. And she says you're supposed to have 40 hours every two years. There's not an allegation in the complaint that says any of those staff did not get 40 hours of training in a two-year period. There just isn't. There's one little allegation. And in terms of personal knowledge, Your Honor, in the dissent in Ibenez, one of the things you said was what was persuasive for you was personal knowledge, corroboration, and extensive research. And if you start personal knowledge, there's not any personal knowledge in this complaint. Well, what about her personal knowledge that I went to the training session in the evening that was to have been an hour and a half or three hours, and it was concluded in 15 minutes. That's me. I was there to be trained. You didn't train me. That is the one part of personal knowledge. But does that establish it wasn't provided over the two years? No, that's the point. And it's not just that it's a lack. If I don't go to a training one day, that doesn't mean that in that two-year period I haven't gotten my 40 hours, which she alleges that's the requirement. It's not that I go complete a particular training. The requirement alleged in the complaint is that you have to have 40 hours every two years. There's no allegation whatsoever that anyone did not have 40 hours, complete 40 hours of training. And conversely, if you start looking at what, in terms of the alleged fraudulent scheme, in paragraphs, you start with 66. She learned during the course of her employment that group counseling sessions were being used for other purposes. She learned. She's the supervisor. If anyone should have personal knowledge, she should. She learned. 67. In February, she learned that counseling services provided in the evening were not being billed. And if she had said, I spoke to Sally, and then I spoke to Jeff, and then I spoke to Greg, and they all told me, all the people on that shift, and they all told me that they didn't have the evening session, is that what you think it would take for her to have made an allegation that was satisfactory? Because we're not at the proof stage. Right. We're at the allegation stage. Right. So that's the first step. But now, remember, that's only dealing with the services being provided. What is the essence of a false claim act case is that the claim is being submitted that is false. And in that point, you go to paragraph 64 of the complaint, and she says when she learned that there were problems, she refused to sign off on these progress notes. And when she raised it with her supervisor, the supervisor agreed with her. Don't. That could be fraudulent. Don't bill. There's not a single allegation that these problems, and she says that the progress notes were vague, incomplete. She was there to correct it. Copy. Yeah. Now, her job is to oversee that. That's like Sheldon v. Kettering where the hospital found the problems of access to the PHI. Here, the defendants hired Ms. Roycroft to review this. And so there's no allegation in the complaint that a false bill. We have, the only allegation is she refused to sign. Her supervisor agreed with her. Not a single allegation that, hey, this false state, this progress note. And they went on and put those notes in that I told them not to. Not a single allegation of that. That kind of thing. Right. And so, but, I'm going to finish now. Is the False Claims Act a strict liability statute? No, it is. Does the biller have to knowingly submit a false claim? It's a fraud claim. You have to have some intent. Right. Now, that's why this time, place, and manner and who, what, when, where is so important. You can't just say, hey, here's a bill. Here's some improper services. And I'll end, since I'm out of time, by saying, in terms of that extensive research, all this person had to do was say, like the person in Prather did, was I refused to sign off on this invoice. Go to the billing department, which she didn't work with at all, but go to the billing department. Was that service provided? I'm sorry. Was that service billed? She would have, and yes or no, she would have personal knowledge then of a false statement, and she could have pled that that's not in this complaint. Thank you, Your Honor. Thank you. Your Honor. There's a big issue regarding the pleading standard. We have to plead facts that plausibly suggest an entitlement to relief. We don't have to prove our case. Most of what is being said is evidentiary issues. That's what you just said is correct if you ignore Rule 9. No. This is not just an Iqbal question. No. This applies to pleading particularity, too. There's four circuit courts that have held that the pleading of particularities or particulars need only be plausibly suggested. That's not our circuit. I didn't see a case from the Sixth Circuit, but it's logical. Just because you have to plead a particular doesn't enhance Rule 8 requirement of plausibility. You're saying Rule 9 is not an enhanced pleading requirement for fraud? No, it certainly is. It says you've got to give particulars. But now how much evidence do you have to bring? Well, that's the issue in all these cases. Right. But my point is we do know the amount, and that is the amount sufficient to plausibly suggest the existence of that particular. Of the fraud? Yes. Because it's a fraud particularity claim. Right. Otherwise— So you've heard the arguments on the other side. How does your complaint connect the dots sufficiently to make that plausible claim? Well, with respect to the counseling services, which are clearly identified as group counseling— In the bill. In the bills. We say we give the scheme. You're billing three hours, every client, every day, and it includes closure. My response is that we've got bills for different amounts, three hours here, two hours there. Is it the same code for both of them? He's saying there's an example or two where it's less than three, but he's admitting— I guess the point is how can we look at these claims and determine that they did, in fact, bill for the three hours that you are alleging, more generally speaking, as is part of the scheme? You have to— You can have a scheme, and you can have a plan to bill for something, but if you don't actually bill for it, it's not a violation of the False Claims Act. So then we need to figure out how you connect the actual bill to the scheme. Can't connect the two, generally speaking. You haven't satisfied the peculiarity, the particularity requirement. Well, we are alleging that they're, as a general matter, billing three hours for each client, each day. So that's the scheme. That's the allegation. You can't say here's the scheme, here are claims that were submitted, so therefore every claim must have been a part of the scheme. If the deficiency was broad enough to cover all claims, which we are alleging. But do you have any authority that you can simply say here's the scheme, here are the claims that were billed during that period, so therefore these claims must coincide with the scheme? That's all the time in the stark violation claims. Do you have any cases under the False Claims Act that say that? For the stark violation, yes. That's a regular occurrence. Is this a stark case? No, but the concept, the principle is the same. Do you know a stark case? Not off the end. It clearly comes under these provisions. The False Claims Act clearly has stark violations in it. Once you have a stark violation, you're saying that you're not authorized because of kickback. And that means all the claims that you've billed during the period you're not authorized are within the theory of a stark violation. You've got just simple logical application. We've got the same situation in a different context. If there are stark violations, you can't be billing any claims at all. So it just makes sense that you don't have to specify what claim it is. But here, there can be a scheme by somebody in the operation of this facility, but it doesn't mean it got billed. I don't understand how this is analogous to a stark claim at all. Well, the scheme is that all of the bills have this deficiency, and we allege that. Now, he wants to argue evidence and say, hey, you might be incorrect. Fine, he can bring his evidence, but I've alleged it. I've alleged that all of these claims— It's not an allegation. It's a question of whether or not you've come forward with one claim where the person you're accusing of the fraud can look at it and tell where that scheme was manifested in that claim. Now, you say it is. I look at the claim, and the claims are different. I can't—that's why I asked you earlier. I'm trying to figure out how do I look at this claim and tell that, in fact, the scheme then ended up flowing through and being manifested in that particular bill, particularly when she says that when she called to her supervisor's attention that services were being recorded that weren't being provided, they didn't bill them. No, that's not true. We alleged otherwise. So that's something that we should be allowed to go to trial and prove. I know they're claiming that, but now you're turning this into a summary trial at the pleading stage. I'm alleging that every claim was submitted in accordance with the scheme. These were billed during that period. And I, therefore, would contend that I've given an example of that overarching scheme. He's contending that the code is inadequate, that the code says group counseling services. Closure group is a group counseling service. No, I didn't identify on the bill that it was closure group, but I identified in other allegations. So I've gotten past that barrier. And is that under—is that the activity code on these bills? I'm not sure what the—it's got the H in front of it, whatever has the H. Okay, that's the billing code. So I think what you're doing is permitting or requiring almost a summary trial at the pleading stage. I don't have to do that. Just enough facts to make my claim more than conceivable. And I think I've done that. Thank you very much. Okay, thank you, counsel, both of you, for your arguments this morning. We appreciate them. That completes our morning docket. You may adjourn court.